**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**DANIEL BRANDON PRINCE (#333029)**　　　　　　　　　**CIVIL ACTION**

**VERSUS**

　　　　　　　　　　　　　　　　　　　　　　　**24-705-SDD-RLB**

**SIDNEY DAVIS, ET AL.**

<u>**NOTICE**</u>

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law, and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on January 14, 2026.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

DANIEL BRANDON PRINCE (#333029)                    CIVIL ACTION

VERSUS

                                                   24-705-SDD-RLB

SIDNEY DAVIS, ET AL.

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The *pro se* plaintiff, an inmate confined at the Louisiana State Penitentiary, Angola, Louisiana, filed this proceeding pursuant to 42 U.S.C. § 1983 against numerous defendants, complaining that his constitutional rights have been violated due to a false disciplinary report, deprivation of property, conspiracy, and retaliation. On March 31, 2025, after screening the plaintiff's Complaint, the Court issued a Report and Recommendation recommending that all of the plaintiff's claims be dismissed with prejudice, except for plaintiff's retaliation claim, asserted against defendants Davis, Williams, and Bernard in their individual capacities, and for which the plaintiff may recover nominal or punitive damages. The Report and Recommendation was adopted on May 8, 2025. *See* R. Docs. 6 and 7.

To determine whether a complaint fails to state a claim under §§ 1915 (e) and 1915A, courts apply the same standard for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Nevertheless, this matter comes before the Court on the Motion to Dismiss filed on behalf of the remaining defendants (R. Doc. 19). The Motion is opposed.[1] *See* R. Doc. 20.

---

[1] Defendants assert in their Reply (R. Doc. 21) that the plaintiff's Opposition is untimely and should not be considered. Defendants' Motion was sent to the plaintiff via US Mail on October 7, 2025, and defendants contend that the last date to file a timely opposition was October 31, 2025. A review of the record reveals that the plaintiff signed his Opposition (R. Doc. 20) on October 28, 2025, and it was received by this Court on October 31, 2025. As such, the Opposition was timely and will be considered by the Court.

**Rule 12(b)(6) Standard**

Defendants assert, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, that Plaintiff has failed to state a claim upon which relief may be granted. In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss pursuant to Rule 12(b)(6). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, *supra*, at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678, *quoting Bell Atlantic Corp. v. Twombly*, *supra*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id*. at 679. "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Id*. at 678 (internal quotation marks omitted).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Further, "[a] document filed *pro se* is 'to be liberally construed' ... and 'a *pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' " *Id*. (citation omitted). Notwithstanding, the court need not accept "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286

(1986), or "naked assertions [of unlawful conduct] devoid of further factual enhancement." *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678 (internal quotation marks omitted).

**Plaintiff's Allegations**

The plaintiff's allegations, as previously set out by the Court, are as follows: On May 30, 2024, it was reported that the plaintiff's Jp6 tablet had been jailbroken. Defendant Brandy McMullen confiscated the plaintiff's tablet and, though after searching the tablet she did not believe it had been altered, turned it over to Investigative Services. Defendant McMullen also wrote a disciplinary report for a Rule #1 Contraband violation and stated therein that the tablet had been confiscated due to the possibility that it had been jailbroken.

Defendant Hank Nettles was the Investigative Services officer who concluded that the plaintiff's tablet had been jailbroken due to a pornographic photo being located on the device. Defendant Nettles did not follow the standard procedure of plugging the device into a kiosk which would then lock the device if the kiosk programming determined the device had been jailbroken. Instead, defendant Nettles based his report on only the presence of the pornographic photograph.

On June 3, 2024, the plaintiff was taken before the disciplinary board and explained that the photo had been sent to him through the J-Pay e-mail system and was screened and approved by security before being forwarded to the plaintiff. The plaintiff also explained that he had purchased music through J-Pay and some album covers featured female nudity. As such, everything on the tablet had been obtained through authorized means. The tablet was sent back to Investigate Services for further investigation.

Defendant Sidney Davis, whom the plaintiff had filed a grievance against in July of 2021, approached the plaintiff on the same date and told the plaintiff that he was guilty and would be

sent to work in the field. Defendant Davis involved himself in the investigation by communicating and conspiring with defendant Elisabeth Robylyn, who was the new Investigative Services officer.

On June 10, 2024, defendant Robylyn issued a new report. Therein defendant Robylyn stated that the plaintiff would not be receiving his tablet back due to the presence of pornographic photos. She further stated that the plaintiff should be found guilty and would be placed on a list of inmates who were prohibited from purchasing a new tablet for a period of one year. This is normal sanction for having a jailbroken tablet, but defendant Robylyn never stated in her report that the plaintiff's tablet had been jailbroken.

Plaintiff hired counsel to represent him at his disciplinary hearing scheduled for July 11, 2024. Prior to the hearing the plaintiff spoke with defendant Davis who informed the plaintiff that his punishment would be two weeks loss of phone privileges and 21 days of field work. On July 11, 2024, the disciplinary hearing was held, and defendant Davis was the disciplinary board Chairman. Defendants Trevor Campbell and Deedra Whitfield also served on the board. Plaintiff was represented by his retained counsel. He was found guilty and sentenced to two weeks loss of phone privileges and 21 days of field work. The plaintiff filed a disciplinary appeal which was denied by defendant Meghan Shipley on July 31, 2024.

On August 12, 2024, defendant Davis informed defendant Campbell that the plaintiff's job would be changed from law clerk to the farm line. When defendant Campbell asked defendant Davis if this was a temporary change defendant Davis responded, "No, since he wants to file a civil suit against me then I am putting him in the field permanently and taking his Clerk job."

On August 13, 2024, the plaintiff confronted defendant Davis about the change. Defendant Davis confirmed the job change which resulted in a decrease of his incentive pay from $8.00/week to $1.60/week. On the same day, the plaintiff filed a grievance and copied defendant Leonard Williams.

Other inmates that work in the law library have been previously caught with contraband and had only been placed on the farm line temporarily then allowed to return to the law library. Their housing assignments also did not change. However, defendants Davis and Eric Bernard had the plaintiff moved from his dorm to the farm line dorm.

The plaintiff spoke to defendant Tim Hooper about the situation, but defendant Hooper did nothing to help the plaintiff. The plaintiff was then called into defendant Bernard's office and was met by defendants Williams, Bernard, and Davis. Defendant Williams ask the plaintiff what was going on and the plaintiff explained. The plaintiff was then asked to step outside and upon being allowed back into the office was asked by defendant Williams, "If we agree to just send you in the field for 21 days and allow you to keep your job in the law library, will all the civil stuff go away?" The plaintiff responded in the negative and was told by defendant Davis that he would remain in the field. On August 23, 2024, the plaintiff filed the instant suit.

**Qualified Immunity**

In response to the plaintiff's allegations, defendants assert that they are entitled to qualified immunity in connection with Plaintiff's claims. The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 F. App'x. 398 (5th Cir. 2012). As enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct

violated the plaintiff's constitutional rights. *Id.* at 201. Second, the district court looks to whether the rights allegedly violated were clearly established. *Id.* This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Id*. The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. *Id.*

Undertaking the qualified immunity analysis, the Court finds that Defendants' motion should be denied. Plaintiff's allegations, accepted as true, state a claim for retaliation as previously determined by this Court.

### Retaliation

It is prohibited for prison officials to take action against an inmate in retaliation for the inmate's exercise of his constitutional rights. *See Woods v. Smith*, 60 F.3d 1161, 1165 (5th Cir. 1995). The purpose of allowing retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising their constitutional rights. *Morris v Powell*, 449 F.3d 682, 686 (5th Cir. 2006). To prevail on a claim of retaliation, a prisoner must establish (1) that he was exercising or attempting to exercise a specific constitutional right, (2) that the defendant intentionally retaliated against the prisoner for the exercise of that right, (3) that an adverse retaliatory action, greater than *de minimis*, was undertaken against the prisoner by the defendant, and (4) that there is causation, *i.e.*, that "but for" the retaliatory motive, the adverse action would not have occurred. *Morris v. Powell, supra*, 449 F.3d at 684. *See also Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003); *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999). An inmate must allege more than his mere personal belief that he is the victim of retaliation, *Johnson v.*

*Rodriguez*, 110 F.3d 299 (5th Cir. 1997), and inasmuch as claims of retaliation are not favored, it is the plaintiff's burden to provide more than conclusory allegations of retaliation:

> To state a claim of retaliation an inmate must ... be prepared to establish that but for the retaliatory motive the complained of incident ... would not have occurred. This places a significant burden on the inmate.... The inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred.

*Woods v. Smith, supra*, 60 F.3d. at 1166.

First, addressing defendants' argument that plaintiff's allegations, even when accepted as true, fail to show a violation of a clearly establish constitutional right, the defendants appear to conflate due process and retaliation claims with those claims that relate to prison unit transfers and prison job reassignment. The key distinction is as follows. On the one hand, it is well-established that "a prisoner does not have a constitutionally protected liberty or property interest in a particular prison job that would give rise to a constitutional claim related to losing the job." *Howard v. Davis*, No. 5:14–CV–14–KS–MTP, 2014 WL 7334531, at *2 (S.D. Miss. Dec. 19, 2014) (citing *Bulger v. U.S. Bureau of Prisons*, 65 F.3d 48, 49 (5th Cir. 1995)). Nor does an inmate have a constitutional right to a particular housing assignment. *Barber v. Quarterman,* 437 Fed. Appx. 302 (5th Cir. 2011).

However, in the retaliation context, a retaliatory act need not independently rise to the level of a constitutional violation. *Bibbs v. Early,* 541 F.3d 267, 271 (5th Cir. 2008). As such, retaliatory acts need not be of a constitutional magnitude. Instead, in this context, regarding a job reassignment, reassignment to a significantly worse position in retaliation is considered more than *de minimis. See Jackson v. Cain*, 864 F.2d 1235, 1250 (5th Cir. 1989) (finding that inmate reassignment from "light work" to backbreaking labor with punishment unit was a qualifying retaliatory act). With regards to a housing transfer, the plaintiff must allege that the new housing

assignment is more dangerous. *See Morris v. Powell*, 449 F.3d 682 (5th Cir. 2006). Accordingly, a housing transfer or prison job reassignment can both suffice as a retaliatory act and fail as a stand-alone due process claim. *Compare Bulger*, 65 F.3d at 49, *with Jackson*, 864 F.2d at 1250.

Following *Jackson,* the Fifth Circuit found error in the dismissal of a retaliatory-job-reassignment claim where the plaintiff has been reassigned from his work in the chow hall. The Court noted that a job transfer cannot be made in retaliation against the exercise of constitutional rights. *See Walker v. Price*, 205 F.3d 1338 (5th Cir. 1999).

To state a claim for a retaliatory job transfer, the plaintiff must plead allegations that the new job assignment was more difficult, strenuous or dangerous. *See Baldwin v. Rogers*, 600 F. App'x 301 (5th Cir. 2015) (finding the plaintiff's allegations failed to state a claim where they did not establish the foregoing). Further, the plaintiff must have been required to remain at the new job assignment for more than a few days. *See Morris v. Powell*, 449 F.3d 682 (5th Cir. 2006) (finding job transfer to be *de minimus* where inmate was only required to work in the new job for only a few days rather than six full weeks).

Here plaintiff alleges that his job was changed from law clerk, presumably an indoor desk job, to the farm line which is presumably outside in the elements and laborious. Further, the job change resulted in a decrease of his incentive pay from $8.00/week to $1.60/week. As such, the plaintiff alleges that he was permanently reassigned to a significantly more strenuous job with significantly less incentive pay, which also resulted in a new housing assignment to the farm line dorm.

Further plaintiff alleges that his job was changed permanently rather than temporarily in retaliation for refusing to drop a civil suit. Defendant Davis state, "… since he wants to file a civil suit against me then I am putting him in the field permanently and taking his Clerk job."

Additionally, the plaintiff was asked by defendant Williams, "If we agree to just send you in the field for 21 days and allow you to keep your job in the law library, will all the civil stuff go away?" The plaintiff responded in the negative and was told by defendant Davis that he would remain in the field. As such, accepting the plaintiff's allegations as true, the plaintiff has stated a claim for retaliation resulting in a greater than *de minimis* retaliatory adverse action. Accordingly, the defendants' Motion should be denied.

## RECOMMENDATION

It is the recommendation of the Magistrate Judge that Defendants' Motion to Dismiss (R. Doc. 19) be denied, and that this matter be referred back to the Magistrate Judge for further proceedings herein.

Signed in Baton Rouge, Louisiana, on January 14, 2026.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**